TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0102
     Facsimile: (213) 894-6269
     E-mail:    andrew.brown@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>SANVEL ABADZHIAN,<br><br>        Defendant. | No. 2:20-CR-26-FMO-1<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT ABADZHIAN<br><br>Hearing: April 7, 2022<br>             3:00pm |

**I.   CONCURRENCE WITH THE PRESENTENCE REPORT**

The government concurs in the findings of the Presentence Report, and recommends a sentence of 72 months in prison.

**II.  THE 3553(A) FACTORS**

    **A.   DEFENDANT'S CRIMINAL HISTORY IS UNDERSTATED**

The Probation Office correctly calculated defendant Abadzhian's criminal history category, but criminal history category I understates his more than a decade-long history of fraud. Defendant admitted participating in a fraud conspiracy that lasted from 2005 through April 18, 2018 (plea agreement ¶ 11), and his criminal history shows this was not the only fraud he committed during that

1

period. In 2013, police were called to a gas station where two or three suspects were using multiple credit cards to purchase excessive amounts of gasoline (commonly stored in fuel bladders hidden in their vehicles). Abadzhian had in his wallet credit cards in his name "as well as access cards which did not have any names or labels embossed or printed on the card" i.e. counterfeited credit cards. (PSR ¶ 56). A search of his "vehicle uncovered a 12-page list of gas stations, additional wallets containing 35 access cards with magnetic strips and no embossing." Id. A later investigation revealed that the information recorded on the counterfeited credit cards belonged "to persons other than Abadzhian." Id. Although defendant was arrested for this offense, there is no record of the case being prosecuted. To be sure, the Court should not assume that every arrest is the equivalent of a conviction, but there is no innocent explanation for defendant's possession of counterfeited credit cards; here the details of the arrest report show that he was, in fact, guilty. Yet despite admittedly engaging in at least two separate frauds for over a decade, defendant is in criminal history category I—the same category that Your Honor would be in—which greatly understates his risk of recidivism.

### B. DEFENDANT AND HIS FAMILY HAVE BEEN COY ABOUT THEIR FINANCES

Defendant claimed that "Prior to the COVID-19 pandemic, his average earning was $1,500 per Month [as a handyman], but his business has declined significantly. He did not provide his current income from this business." (PSR ¶ 82). Defendant's wife was similarly taciturn about their income:

> Abadzhian's wife stated that she does know Abadzhian's monthly income; however, her monthly income is $3,000.

> When the Probation Officer inquired how she and Abadzhian manage their respective finances, she hung up the phone and did not respond to the undersigned's subsequent call and voicemail with a request for a call back.

(PSR ¶ 92). Perhaps this is because defendant said he had monthly expenses of $12,480, which suggests that he and his wife have an additional source of income, as what income they disclosed to Probation would support less than half of their expenses, even considering the government assistance defendant receives from EDD. (PSR ¶ 88(c)).

Defendant's reluctance to disclose income to Probation is in keeping with his actions in this case, in which he consistently withholds information from Probation and moves assets in an apparent effort to prevent them from being used to pay restitution:

> On April 27, 2018, nine days after the search warrant, Abadzhian quitclaimed his interest in his residence to the Cristina Abajyan Living Trust.

(PSR ¶ 21). Similarly,

> The defendant has not fully complied with the provisions of this [financial disclosure] order because he did not fully complete his PFS and did not provide all of the requested supporting documentation . . . .

(PSR ¶ 87).

> Abadzhian did not disclose any of his interest in his wife's living trust, which currently owns his residence is under contract of sale. He also has sufficient financial resources to incur more than $12,000 in monthly expenses. Based on the foregoing, Abadzhian has failed to demonstrate any inability to make an immediate payment toward his restitution obligations. In addition, given his wife's current income, and the income of his two adult daughters, should his family downsize to a smaller residence following the sale of their residence, and after the vehicle leases end, Abadzhian should have the ability to apply a significant portion of his monthly earnings toward his restitution obligations.

(PSR ¶ 96). Defendant's efforts to conceal assets and income suggest that he is not genuinely remorseful, but rather is behaving

3

transactionally, trying to minimize his prison sentence on the one hand, while maximizing the retained profit from his offense on the other.

### C. DEFENDANT RECRUITED HIS CO-DEFENDANT INTO THE SCHEME

Probation found that whether defendant "qualifies for an aggravating role [enhancement] is a close call," but ultimately recommended against applying it. (PSR ¶ 41). But regardless of whether defendant supervised or led his co-defendant in the scheme, it is clear that he recruited her into the scheme: "Abadzhian told law enforcement officers that Nazaryan became involved in the offense because of him, that she worked for him at his fraud office but was not his business partner." (PSR ¶ 41). That defendant brought another person in to his fraudulent scheme, and turned her into a criminal, is seriously aggravating.

### CONCLUSION

Defendant committed a professional and sophisticated fraud involving hundreds of stolen identities (see PSR ¶ 18) that lasted for well over a decade. Just in the last few years of the fraud, for which some records exist, the losses were over $1.7 million. Defendant clearly has the organization and drive to succeed, but has misapplied his energy into crime. Worse, defendant recruited his co-conspirator into the scheme, magnifying the damage he caused not only to the victims of his offense, but also to his co-defendant Lilit Nazaryan. The government's recommended sentence, 72 months in prison, may seem too lenient as it is only half the length of time that defendant perpetrated his fraud, particularly as defendant seems evasive with probation about his finances, suggesting that his goal is not to compensate his victims, but rather to keep as much of

his ill-gotten gains as he can.  Nevertheless, defendant has not previously been to prison, so the government hopes that even this recommended sentence, which is only the midpoint of a conservatively calculated guideline range, may be sufficient to deter defendant from his established criminality.

Dated: February 28, 2022            Respectfully submitted,

                                    TRACY L. WILKISON
                                    United States Attorney

                                    SCOTT M. GARRINGER
                                    Assistant United States Attorney
                                    Chief, Criminal Division

                                    /s/ Andrew Brown
                                    _____
                                    ANDREW BROWN
                                    Assistant United States Attorney

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA